IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DIGI PORTAL LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-1725-MN |
| | ) | |
| CARMAX BUSINESS SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**CARMAX BUSINESS SERVICES, LLC'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

OF COUNSEL:

Robert L. Lee
Emily Chambers Welch
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309
(404) 881-7000
Bob.Lee@alston.com
Emily.Welch@alston.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Beth Ann Swadley (No. 6331)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6727
agaza@ycst.com
bswadley@ycst.com

*Attorneys for Defendant
CarMax Business Services, LLC*

Dated: February 11, 2020

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

I.     NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 1

II.    SUMMARY OF THE ARGUMENT ............................................................................... 1

III.   STATEMENT OF FACTS .............................................................................................. 3

IV.    LEGAL STANDARDS .................................................................................................... 5
       A.     Motions To Dismiss Pursuant To Rule 12(b)(6) ................................................. 5
       B.     Section 101 Eligibility ...................................................................................... 6

V.     ARGUMENT AND CITATION OF AUTHORITIES ...................................................... 7
       A.     The '227 Patent is Not Patent Eligible .............................................................. 7
              1.     Claim 2 of the '227 Patent Lacks Patentable Subject Matter .................... 7
              2.     Claim 2 of the '227 Patent Adds Nothing of Patentable
                     Significance ................................................................................... 13
              3.     The Other Claims of the '227 Patent Are Also Patent-Ineligible ............. 14
       B.     The Cache Patents are Not Patent Eligible ....................................................... 15
              1.     The Cache Patents are Directed to An Abstract Idea .............................. 16
              2.     The Cache Patents Have No Inventive Concept to Confer
                     Eligibility ...................................................................................... 18
              3.     The Cache Patents' Dependent Claims Add Nothing Inventive .............. 19

VI.    CONCLUSION .............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3G Licensing, S.A. v. HTC Corp.*,
C.A. No. 17-83-LPS, 2019 WL 2904670 (D. Del. July 5, 2019) ..................................8, 17, 18

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018).......................................................................................7

*Affinity Labs of Texas, LLC v. DirecTV, LLC*,
838 F.3d 1253 .................................................................................................................11

*Alice Corp. Pty., Ltd. v. CLS Bank, Int'l*,
573 U.S. 208 (2014)................................................................................................ *passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).....................................................................................................5, 6

*Baggage Airline Guest Servs., Inc. v. Roadie, Inc.*,
351 F. Supp. 3d 753 (D. Del. 2019).............................................................................3, 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................................5

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
778 F. App'x 882 (Fed. Cir. 2019) ................................................................................10

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n.*,
776 F.3d 1343 (Fed. Cir. 2014).......................................................................................11

*Customedia Techs., LLC v. Dish Network Corp.*,
951 F.3d 1359 (Fed. Cir. 2020)..................................................................10, 12, 18, 19, 20

*Genetic Techs. Ltd. v. Merial LLC*,
818 F.3d 1369 (Fed. Cir. 2016).......................................................................................7

*Hyper Search, LLC v. Facebook, Inc.*,
C.A. No. 17-1387-CFC-SRF, 2018 WL 6617143 (D. Del. Dec. 17, 2018) ...............10, 11, 13

*I/P Engine, Inc. v. AOL Inc.*,
576 F. App'x 982 (Fed. Cir. 2014) (Mayer, C., concurring) ...................................................7

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015)...........................................................................1, 2, 9, 10, 13

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015).................................................................................10, 13

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    566 U.S. 66 (2012).............................................................................................................6

*In re Morsa*,
    809 F. App'x 913 (Fed. Cir. 2020) ...................................................................................10

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015)..........................................................................................7

*Personalized Media Communc'ns, LLC v. Amazon.com, Inc.*,
    161 F. Supp. 3d 325 (D. Del. 2015)...........................................................................10, 14

*PPS Data, LLC v. Jack Henry & Assocs., Inc.*,
    No. 2:18-cv-00007-JRG, 2019 WL 1317286 (E.D. Tex. Mar. 21, 2019)..............................16

*RecogniCorp, LLC v. Nintendo Co.*,
    855 F.3d 1322 (Fed. Cir. 2017)..........................................................................................6

*SAP America, Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018)..........................................................................................7

*SynKloud Techs., LLC v. HP Inc.*,
    C.A. No. 19-1360-RGA, 2020 WL 5798725 (D. Del. Sept. 29, 2020) ............................10, 11

*In re TLI*,
    823 F.3d 607 (Fed. Cir. 2016)..........................................................................................14

*TPP Tech LLC v. Zebra Techs. Corp.*,
    403 F. Supp. 3d 382 (D. Del. 2019)...................................................................................7

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)........................................................................................11

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014), *cert. denied*, *Ultramercial v. WildTangent*, 135
    S. Ct. 2907 (2015)............................................................................................................6

*Versata Software, Inc. v. NetBrain Techs., Inc.*,
    C.A. No. 13-676-LPS-CJB, 2015 WL 5768938 (D. Del. Sept. 30, 2015)...................2,  17, 18

*Visual Memory LLC v. NVIDIA Corp.*,
    867 F.3d 1253 (Fed. Cir. 2017)........................................................................................12

*WhitServe LLC v. Dropbox, Inc.*,
    C.A. No. 18-665-CFC, 2019 WL 3342949 (D. Del. July 25, 2019).......................................11

**Statutes**

35 U.S.C. § 101 .................................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................1, 5, 7

## I.     NATURE AND STAGE OF THE PROCEEDINGS

On December 12, 2020, Plaintiff Digi Portal LLC ("Digi Portal" or "Plaintiff") filed its

Complaint accusing Defendant CarMax Business Services, LLC ("CarMax") of patent

infringement. Plaintiff alleges that CarMax directly and indirectly infringes claims of U.S. Patent

Nos. 5,983,227 ("the '227 Patent"), 8,352,854 ("the '854 Patent"), 7,171,414 ("the '414 Patent"),

7,565,359 ("the '359 Patent"), and 9,626,342 ("the '342 Patent") (collectively, the "Patents-in-

Suit"). CarMax moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6)

for failure to state a claim for relief on the basis that the Patents-in-Suit are not directed to eligible

subject matter under 35 U.S.C. § 101.

## II.    SUMMARY OF THE ARGUMENT

All five of the Patents-in-Suit are directed to ineligible subject matter under Section 101,

warranting dismissal of the Complaint. Claims are evaluated for ineligibility using a two-step test

outlined in *Alice Corp. Proprietary Limited Company, Ltd. v. CLS Bank, International*, 573 U.S.

208 (2014). Step one asks if the claims are directed to an abstract idea. Here, the Patents-in-Suit

mimic the "generic web server with attendant software, tasked with providing web pages to and

communicating with the user's computer" that the Federal Circuit has already found ineligible.

*Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015)

("*Capital One*") (holding such claims ineligible). Step two asks whether the claims provide any

inventive concept that transform them from abstract ideas into patent-eligible subject matter. Here,

the Patents-in-Suit's abstract ideas are not transformed by any inventive concept, as nothing is

added beyond the basic underlying abstract idea. In light of the subject-matter ineligibility of the

Patents-in-Suit, Plaintiff's Complaint should be dismissed with prejudice.

The Patents-in-Suit can be addressed in two groups. The '227 Patent stands alone, and is

directed to the abstract idea of providing customized content to a user. The other four Patents-in-

Suit (collectively, the "Cache Patents") are similar, but the abstract idea in those patents is providing customized content to a user by recycling or reusing old content if conveniently available based on frequency of access. Magistrate Judge Burke previously reviewed this same concept, "recycling old information," and recommended a finding that it does not confer eligibility. *Versata Software, Inc. v. NetBrain Techs., Inc.*, C.A. No. 13-676-LPS-CJB, 2015 WL 5768938, at *21 (D. Del. Sept. 30, 2015). Similarly here, the claims of the Patents-in-Suit are directed to nothing more than receiving, obtaining, processing, storing, and providing information using generic computing elements. Federal courts have held such claims ineligible because they are directed to abstract ideas, and the claims of the Patents-in-Suit warrant the same determination.

Moving to step two, as expressly forbidden by *Alice*, "each step [of the Patents-in-Suit] does no more than require a generic computer to perform generic computer functions." *See* 573 U.S. at 225. The use of known methods to provide customized content, even including the use of recycled information in the case of the Cache Patents, "cannot impart eligibility." *See Versata*, 2015 WL 5768938, at *22. Further, "merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea." *Capital One*, 792 F.3d at 1371. The claims of the Patents-in-Suit simply refer to well-known, generic and conventional computing equipment like "servers" and "storage devices" (*i.e.*, Random Access Memory ("RAM")) performing their long-established functions. The arrangement of these elements is likewise non-inventive, representing simple re-use and backup of the relevant information, corresponding to the abstract idea itself. The claims of the Patents-in-Suit are neither sufficiently specific nor elucidating on how to implement the methods and systems in any particular, much less inventive, manner. Accordingly, they are invalid under § 101.

## III.     STATEMENT OF FACTS

The Patents-in-Suit claim methods and systems for delivering customized web pages to individual users (*e.g.*, D.I. 1 at ¶¶ 12, 41). These customized pages are provided in two ways. In the case of the '227 Patent, the method calls for obtaining user preferences from a user, and "real-time information" from "information sources," creating a template program from the user preferences, and, upon request from a user, combining that template program with the stored real-time information to generate a customized page that is then provided to the user (*e.g.*, D.I. 1, Ex. B at Cl. 2). With respect to the '227 Patent, Claim 2 is representative.[1]

In the Cache Patents, the method is largely the same, but the information used to generate the customized information can be stored in multiple locations, and is accessed from one of those locations based on the frequency that the information is accessed (*e.g.*, D.I. 1, Ex. A at Cl. 1). With respect to the Cache Patents, Claim 1 of the '854 Patent is representative.

The claimed goal of the Patents-in-Suit is to provide customized information to a user in the form of customized web pages – a concept that the Patents-in-Suit make clear is known in the prior art (*e.g.*, '227 Patent at 1:30-46, 1:61-2:3). This customized information includes data such as a "custom selection of stock quotes, news headlines, sports scores, weather, and the like" (*id.* at 2:3-8). One "known" system for achieving this goal is a page server running a program or a script that queries individual data servers and then generates the custom page and provides it to the user (*id.* at 1:31-41). Another is "continually streaming" live data which "is stored local to the user" for immediate use whenever the user requests the customized page (*id.* at 1:47-54). The Patents-in-Suit claim that these methods have issues with scale and speed. However, rather than propose a

---

[1] Courts may analyze representative claims in a § 101 analysis where the claims are "substantially similar and linked to the same abstract idea." *Baggage Airline Guest Servs., Inc. v. Roadie, Inc.*, 351 F. Supp. 3d 753, 758 (D. Del. 2019) (quotation omitted).

novel computing solution to solve these problems, the Patents-in-Suit claim a combination of generic equipment performing techniques well known outside of computing for decades.

The Patents-in-Suit describe the use of generic "servers," "browsers, "databases," "network appliances," "caches," "storage devices," and "shared memory" (*id.* at 2:52-5:7). This equipment can be connected using well-known networks, utilizing "messaging or other protocols [that are] well known…" (*id.* at 2:58-3:21, 3:35-42). The Patents-in-Suit do not indicate that any of these elements were newly-created or modified to improve their functionality (*see generally id.* at 2:58-3:48). Rather, the Patents-in-Suit refer to the computing elements with respect to brand names of existing, off-the-shelf elements or in generic terms. For example, the "user configuration database 116," which contains the user configuration records 206, is simply a "Unix file structure which stores each user configuration in a text file" (*see id.* at 3:39-41; *see also id.* at 3:54-55). The "page servers," which are used to generate the customized webpages, are simply generic "microcomputers running the Unix® operating system" (*id.* at 3:35-41). The "shared memory" is simply RAM that stores "live data" (*i.e.*, content, such as the news, stock quotes, etc.) (*see id.* at Fig. 2, 2:12-14, 3:60, 3:62-63, 4:13-17). The RAM is used to store content rather than using content "servers [ ] and [a] page template" to obtain the "live data" each time it is requested (*see id.* at 4:13-17). And, finally, the user-specific "template programs" can be obtained either by combining user configuration information found within a generic "user configuration database" with a "global front page template," or, if they had previously been created and stored, from the "cache" found within the "page server" (*see id.* at 3:51-62, 4:40-42, Fig. 2).

Like the known method of using a program or script, the alleged invention is merely a "process [that] is executed on the page server for every request" for a custom page (*id.* at 1:66-67). "User preferences" based on the user's personal "selection" of live data are combined in a generic

template to "generate" a "user template" (*id.* at 1:61-2:3, 5:42-43). The page server then generates the custom page using live data "to fill [the] user template" (*id.* at 2:3-5, 3:62-64). Like the known method of continuous streaming, "the live data [is] stored in a local, shared memory" in the page server (*id.* at 2:8-11, 4:24-27). In the Cache Patents, the user-specific "template program" is stored in a temporary data store known as a "cache" if the user has recently requested custom information from the page server (*id.* at 1:67-2:3, 4:40-53, Fig. 2).

The patentee claims that these methods of storing and accessing data, including the step of using a "local, shared memory," improve speed and efficiency (*id.* at, 2:8-11, *see also* 1:67-2:3, 4:40-53, 5:15-24, 3:65-4:53). However, the patentee does not claim to have invented the use of shared memory, caching, or using cache to store customized data. The Patents-in-Suit do not describe a specific implementation of local, shared memory or cache memory, which is represented merely as a flowchart symbol in Figure 2. Shared memory in generic "RAM" is only used for its conventional purpose – storing data (*id.* at Abstract, 2:11-14). The Patents-in-Suit do not claim or disclose any improved memory system, so they are ineligible under *Alice*.

## IV.   LEGAL STANDARDS

### A.   Motions To Dismiss Pursuant To Rule 12(b)(6)

Dismissal of a patent infringement claim is warranted under Rule 12(b)(6) where the Complaint "fail[s] to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). Stating a claim upon which relief may be granted "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (holding that while factual allegations are taken as true, this assumption "is inapplicable to legal conclusions").

### B.   SECTION 101 ELIGIBILITY

Section 101 of the Patent Act defines patent-eligible subject matter and provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 101.

Pursuant to the two-step test for patent eligibility, courts first ask whether the relevant patent claims are directed to "one of the four statutorily provided categories of patent-eligible subject matter" (*i.e.*, "processes, machines, manufactures, [or] compositions of matter"), or to a "patent-ineligible concept" such as an abstract idea. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 713-14 (Fed. Cir. 2014), *cert. denied*, *Ultramercial v. WildTangent*, 135 S. Ct. 2907 (2015). (citing 35 U.S.C. § 101 and *Alice*, 53 U.S. 208). If the former, "the claims pass muster under § 101." *Ultramercial*, 772 F.3d at 714.

If the latter, courts undergo step two and consider whether the claims include an "inventive concept"—an "element[] or combination of elements . . . sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the natural law [or abstract concept] itself." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, at 72-73 (2012). The mere recitation of "'well-understood, routine, conventional activit[ies],' previously known to the industry," is insufficient to transform an abstract idea into patentable subject matter. *Alice*, 573 U.S. at 225 (quoting *Mayo*, 566 U.S. at 73). "To save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).

Patent eligibility under § 101 is a question of law suitable for resolution on a motion to dismiss. *See SAP America, Inc. v. InvestPic, LLC,* 898 F.3d 1161, 1166 (Fed. Cir. 2018) ("Like other legal questions based on underlying facts, [patent eligibility under Section 101] may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law.") (citations omitted); *Genetic Techs. Ltd. v. Merial LLC,* 818 F.3d 1369, 1373 (Fed. Cir. 2016) ("We have repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion."); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015).

Moreover, claim construction is not a prerequisite to a 35 U.S.C. § 101 dismissal. *Aatrix Software, Inc. v. Green Shades Software, Inc.,* 882 F.3d 1121, 1125 (Fed. Cir. 2018)*; TPP Tech LLC v. Zebra Techs. Corp.,* 403 F. Supp. 3d 382, 388 (D. Del. 2019) (granting motion to dismiss under § 101 without claim construction). Rather, as courts have recognized, early resolution of such claims can "spare both litigants and courts years of needless litigation." *I/P Engine, Inc. v. AOL Inc.*, 576 F. App'x 982, 996 (Fed. Cir. 2014) (Mayer, C., concurring) (noting the "clear advantages to addressing section 101's requirements at the outset of litigation" including obviating the need for "lengthy claim construction").

## V.    ARGUMENT AND CITATION OF AUTHORITIES

### A.    THE '227 PATENT IS NOT PATENT ELIGIBLE

Representative Claim 2 of the '227 Patent fails under both prongs of the *Alice* test for subject matter eligibility as it is directed to an abstract idea and recites no inventive concept.

#### 1.    Claim 2 of the '227 Patent Lacks Patentable Subject Matter

Claim 2 is representative of the claims in the '227 Patent:

2. Using a page server, a method of providing real-time responses to user requests for customized pages, the method comprising the steps of:

[a] obtaining user preferences, wherein a user's user preferences indicate items of interest to that user;

[b] obtaining real-time information from information sources;

[c] storing the real-time information in a storage device;

[d] combining the user preferences for the user and a template to form a template program specific to the user;

[e] receiving, from a user and at the server, a user request for a customized page customized according to the user preferences;

[f] executing the template program specific to the user using the real-time information stored in the storage device as input to the template program to generate the customized page; and

[g] providing the user with the customized page, wherein the steps of executing and providing are performed in real-time response to receipt of the user request in the step of receiving and wherein the customized page includes at least one item of real-time information selected from the storage device.

Claim 2 is directed to the basic process of filling in a template with a user's preferences (steps [a] and [d]), obtaining and storing customized information (steps [b] and [c]), and, upon receiving a request for the customized information (step [e]), obtaining and providing it to a user on a webpage (steps [f] and [g]). In other words, the '227 Patent claims are comprised of providing information that the user wants.[2] This sort of customized display is the exact sort of business practice that has been carried out from time immemorial separately from a computer.

---

[2] Judge Stark previously found that the abstract idea of "providing targeted information, including advertising to a user" was not what the '854 Patent (a Cache Patent) was directed to. *3G Licensing, S.A. v. HTC Corp.*, C.A. No. 17-83-LPS, 2019 WL 2904670, at *2 (D. Del. July 5, 2019) ("*Quotient*") (denying defendant's § 101 challenge without prejudice). Judge Stark suggested, "based on the record" in that case, that there could be an inventive concept in a limitation in the '854 Patent related to storing user templates. *Id.* This limitation is notably absent from the '227 Patent's claims, rendering *Quotient* inapposite to the '227 Patent. The Cache Patents, with a properly characterized abstract idea and different record, are addressed below.

Imagine purchasing a car in 1992. You call up your local dealer and describe what you want - a SUV. A hopeful agent takes notes, selecting a custom form or template for SUV-interested customers, perhaps even a specific one for SUV-interested customers who want a mid-sized SUV, and notes your preferences in certain areas of the form or template. The agent looks out the window and jots down cars on the lot that match what you are looking for in other areas of the form or template. A few days later, you visit the dealership, and that form is consulted to help select which cars to show you. This is all that the '227 Patent (and the Cache Patents) claim, but they claim doing so in the context of a website: combining a custom SUV-interested form (a customized template) corresponding to one of multiple pre-existing dealership forms and your unique preferences, with preference and product information (customized "real-time information") for your wants and the dealership's stock information. This is merely a "method of organizing human activity" that can be performed separate and apart from a computer making it an ineligible abstract idea. *See Alice*, 573 U.S. at 220.

This practice of "information tailoring is 'a fundamental . . . practice long prevalent in our system,'" dating back to newspapers and television advertising. *Capital One*, 792 F.3d at 1369–70 (quoting *Alice*, 573 U.S. at 219). The *Capital One* court held ineligible claims that "generally relate[d] to customizing web page content as a function of navigation history and information known about the user." *Id.* at 1369. The representative claim recited "an interactive interface," which the plaintiff characterized as "software" that "tailors the web page to the specific individual based on the profile." *Id.* at 1370. But the court determined the limitation "simply describes a generic web server with attendant software" and that the claim was directed to "tailoring content" based on "personal characteristics in a user profile . . . ." *Id.* at 1369-70.

Claim 2 of the '227 Patent similarly claims "a page server" customizing web page content that includes a "template program" personalized by "user preferences" ('227 Patent at Cl. 2). The claimed method "execut[es] the template program specific to the user" to provide customized information (*id.* at 1:61–66, 5:42–43, Cl. 2). There is no meaningful distinction between the "web server" and "interactive interface" claimed in *Capital One* and the "page server" and "template program" claimed in the '227 Patent. Furthermore, other decisions confirm that providing customized information to a user is an abstract idea. *See*, *e.g.*, *Personalized Media Communc'ns, LLC v. Amazon.com, Inc.*, 161 F. Supp. 3d 325, 330 (D. Del. 2015) (claim was "directed to the abstract idea of using personal information to create a customized presentation"); *see also Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1362-63 (Fed. Cir. 2020) (claims were "directed to the abstract idea of using a computer to deliver targeted advertising to a user"); *In re Morsa*, 809 F. App'x 913, 917 (Fed. Cir. 2020) (claim directed to a method of providing customized advertisements to a user based on the user's demographic information was an abstract idea); *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 888 (Fed. Cir. 2019) (similar).

The idea of providing customized content using a template has also been held to be an abstract idea. *See Internet Patents Corp. v. Active Network, Inc*., 790 F.3d 1343, 1347-48 (Fed. Cir. 2015) (claim directed to "the idea of retaining information in the navigation of online forms" in a dynamic webpage was abstract). Courts in this District "have held that patents directed to using templates to collect or generate documents, such as web pages, are abstract ideas." *Hyper Search, LLC v. Facebook, Inc.*, C.A. No. 17-1387-CFC-SRF, 2018 WL 6617143, at *6 (D. Del. Dec. 17, 2018) (claims directed to creating a webpage based on a template generated using user-specific information were abstract) (citing cases); *see also SynKloud Techs., LLC v. HP Inc.*, C.A.

No. 19-1360-RGA, 2020 WL 5798725, at *11 (D. Del. Sept. 29, 2020) (claims directed to "the process of formatting emails using templates for delivery to a printer" are abstract). Claim 2 is thus directed to an abstract idea.

Not only is Claim 2 directed to performing a pre-computing method using a computer, it is untethered from any specific implementation, and does not involve any improvement in a computer's capabilities. Claim 2 recites steps for "obtaining," "storing," "combining," "receiving," and "executing," and ultimately "providing" customized information to a user, but it does "not sufficiently describe how to achieve these results in a non-abstract way." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017); *see also Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253, 1258-59 (reciting "the function," but "not a particular way of performing that function" made the claims ineligible).

The Federal Circuit has made clear that where "the claimed invention is entirely functional in nature" and "[n]othing in the [patent figures] or the text of the specification provides any details regarding the manner in which the invention accomplishes the recited functions" the claims are ineligible. *See Affinity Labs*, 838 F.3d at 1260. All of the claimed steps are classic examples of abstract ideas, particularly when all that the claims require is to "do it on a computer." *Hyper Search*, 2018 WL 617143, at *6; *see also Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n.*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (claims for "collecting," "recognizing," and "storing" data "in a memory" were abstract); *WhitServe LLC v. Dropbox, Inc.*, C.A. No. 18-665-CFC, 2019 WL 3342949, at *5 (D. Del. July 25, 2019) (using basic computing elements to perform basic processes was "not enough to render the claims nonabstract"). The claimed steps recite results without meaningful direction or implementation information and are ineligible.

11

The claimed invention is not like the patent-eligible invention of *Enfish, LLC v. Microsoft Corp.*, which improved "the way a computer stores and retrieves data in memory." 822 F.3d 1327, 1339 (Fed. Cir. 2016). In *Enfish*, the Federal Circuit distinguished the eligible claims, which were "directed to a specific improvement to the way computers operate" and provided for an unconventional database structure, from claims that are "simply adding conventional computer components to well-known business practices." 822 F.3d at 1336-38. Unlike *Enfish*, nothing in Claim 2 of the '227 Patent shows any unconventional methodology that amounts to a "specific improvement to the way computers operate." *Id.* at 1336. It is instead focused on a process "for which computers are invoked merely as a tool." *Id.*

The claimed invention is also distinguishable from the "enhanced computer memory system" based on unconventional "programmable operational characteristics" that could "outperform a prior art memory system that is armed with a cache many times larger" that the Federal Circuit found was patent-eligible in *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259 (Fed. Cir. 2017) (internal quotations omitted). The claimed invention of the '227 Patent does not improve upon the functioning of the memory components used in the claims. Claim 2 does not describe any improvement to the functionality of a computer itself or to the memory components, but instead merely describes the use of the computer as a "tool" to perform the claimed method. *Id.*; *see also Customedia Techs., LLC*, 951 F.3d at 1363-64 (rejecting argument that "by providing a reserved and dedicated section of storage, the claimed invention improves the data delivery system's ability to store advertising data, transfer data at improved speeds and efficiencies, and prevent system inoperability due to insufficient storage" because it "merely improves the abstract concept of delivering targeted advertising using a computer only as a tool"). Even where the specification, as here, identifies "generic speed and efficiency improvements," this is insufficient

for the idea to be nonabstract. *Customedia*, 951 F.3d at 1365; *Hyper Search*, 2018 WL 6617143, at *6 (holding that claims were directed to an abstract idea even though the specification described benefits with respect to "time required for sending a home page" and ease of use).

Representative claim 2 of the '227 Patent is directed to the abstract idea of providing customized information to a user. Accordingly, this Court must analyze whether the claims "transform" it into patent-eligible subject matter by providing an "inventive concept."

### 2.    Claim 2 of the '227 Patent Adds Nothing of Patentable Significance

To save a patent at step two, a patent must recite "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217-18 (internal citations omitted). Claim 2 does not recite elements, considered individually or as an ordered combination, that provide the "significantly more" required to transform it into a patent-eligible application of the abstract idea.

Considered individually, the claim elements of the '227 Patent recite generic components performing routine functions. Using a template program to generate a dynamic web page is insufficient to "transform" an abstract idea, as this is "merely [a] generic data collection step[] or siting the ineligible concept in a particular technological environment." *Internet Patents*, 790 F.3d at 1349; *see also Hyper Search*, 2018 WL 6617143, at *9 ("generic descriptions of computer components and functions . . . do not rise to the level of inventive concept."). Methods for providing customized information were "known" ('227 Patent at 1:31–53). The alleged invention may be implemented with only a generic "browser," "servers," "network appliance," and "database" (*id.* at 2:52–3:47). The page server contains basic hardware like a "micro-computer," "shared memory," and "a cache," performing routine functions (*id.* at 3:35–41, 3:59–61). There is nothing "inventive" about using a server to provide a customized user page or using RAM to store data. *See Capital One*, 792 F.3d at 1370 ("[M]erely adding computer functionality to increase the

speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea."). This is consistent with the finding in the *Personalized Media* case that "[t]he improved speed or efficiency inherent with applying an abstract idea on a computer does not provide an inventive concept" and thus fails *Alice* Step 2. *Personalized Media*, 161 F. Supp. 3d at 338.

Considered as an ordered combination, the '227 Patent allegedly generates custom front pages "much more quickly" because it uses "shared memory as compared with using servers and [a] page template" (*id.* at 4:13–17). What the patent describes, however, is the natural benefit of using generic RAM to store information (*see id.* at Abstract, 1:41–53; 2:11–14 (noting how local storage reduces the "attendant delay" of providing custom pages)). Storing data is a "generic computer function . . ." *In re TLI*, 823 F.3d 607, 612 (Fed. Cir. 2016). Representative Claim 2 covers only performing the abstract idea in the context of the internet using known, generic equipment, which is grounds for its dismissal for patent-ineligibility.

### 3.    The Other Claims of the '227 Patent Are Also Patent-Ineligible

The remaining claims of the '227 Patent are all directed to the same abstract concept as Claim 2. Claims 3-9, which depend from Claim 2, just specify the type of "real-time information" to be provided, storing that information in memory capacity, server capacity, time constraints, and default configurations ('227 Patent at 20:63-22:15 (Cls. 3-9)). Independent Claim 1 merely claims a system for carrying out Claim 2's method in the context of providing sports information (*id.* at 19:35-20:39 (Cl. 1)). These claims provide no additional technical specificity, or non-generic computer equipment that might carry an inventive concept. Instead, they are all directed to the same general concept using the same general equipment. Allegations of infringement based on these additional claims of the '227 Patent also should be dismissed.

B. **THE CACHE PATENTS ARE NOT PATENT ELIGIBLE**

The Cache Patents claim the same concept as the '227 Patent, but include an additional limitation requiring the template program to come from "one of at least two locations" based on "the frequency of the user request" (D.I. 1, Ex. A at Cl. 1). The Cache Patents' claims are, therefore, directed to the abstract idea of providing customized information from the most convenient location based on frequency of access. This additional storage limitation lacks an inventive concept sufficient to confer eligibility. Claim 1 of the '854 Patent is representative of the independent claims of the Cache Patents, which can be evaluated collectively for purposes of this § 101 inquiry because they are all "substantially similar and linked to the same abstract idea." *Baggage Airline Guest Servs.*, 351 F.Supp. 3d at 758 (quotation omitted). The Cache Patents, as well as the '227 Patent, share a common specification, and all of the Cache Patents are directed to the same invention. Claim 1 is repeated here, with the additional limitation regarding retrieving information from one of two locations, emphasized in bold.

 1. A method comprising:

 [a] receiving a user request for a customized page;

 [b] receiving a template program that is unique to the user and based on user configuration information, the user configuration information being supplied by the user and used to build the template program that is unique to the user, the user configuration information including user demographic information, **and wherein the template program is received from one of at least two locations, the location determined from the frequency of the user request for the customized page**;

 [c] receiving an advertisement selected in accordance to the user demographic information;

 [d] executing the template program using the selected advertisement to generate the customized page; and

 [e] providing the customized page to the user.

For ease of reference, attached as Exhibit 1 is a chart comparing the independent claims of the Cache Patents (D.I. 1, Exs. A (Cls. 1, 8, 15), G (Cls. 1, 10, 11), K (Cls. 1, 10), M (Cls. 1, 9, 17)), illustrating that they are substantially similar by color-coding similar limitations. *See PPS Data, LLC v. Jack Henry & Assocs., Inc.*, No. 2:18-cv-00007-JRG, 2019 WL 1317286, at *5 (E.D. Tex. Mar. 21, 2019) (articulating that defendants first bear the burden of demonstrating a claim is representative, which then shifts to the plaintiff to identify a difference material to the § 101 analysis). Although some claims recite additional or different steps, they are all substantially similar, if not identical, limitations linked to the same abstract idea. Claim 1 of the '854 Patent is thus representative, and all independent claims are invalid under *Alice*.

### 1.     The Cache Patents are Directed to An Abstract Idea

The Cache Patents involve the same basic concepts as the '227 Patent (providing customized information), but include limitations as to the location of the "template program." Thus, while related to the '227 Patent, the Cache Patents are directed to the abstract idea of providing customized information from the most convenient location based on frequency of access. The "template program" can be obtained by creating the template on-the-fly, or, if previously created, from the "cache" within the "page server" (*see* '854 Patent at Cl. 1, 3:58–4:5, Fig. 2.) The specification explains that "user templates are stored in cache for long enough to be reused," but they can be "flushed" (deleted) if the user's template is edited or the account has been inactive. ('227 Patent at 4:40–52). In other words, if a user template is accessed frequently, it will be stored for reuse. If not, it will be deleted, and will need to be regenerated if requested in the future.

As Magistrate Judge Burke has explained, "the idea of receiving a request for information and transmitting a response by either recycling old information or collecting the requested information into a new file that will be stored—in other words, a system meant to avoid reinventing

the wheel every time a new request is received" is a "basic human function" and an abstract idea. *Versata*, 2015 WL 5768938, at *21 (recommending dismissal of claim asserting infringement of patent directed to "caching and retrieving cached dynamically generated files"). As in *Versata*, the '854 Patent specification describes its "two locations" as either a temporary cache or a re-creation if not already available. Per *Versata*, the practice of organizing and re-using records efficiently is simple records management. Stepping back to the 1992 car dealership analogy, this is nothing more than a normal process, performed by dealership agents for ages with pen, paper, and file cabinets. Say you do not buy a car on your first visit. The agent will put your forms, with your preferences, into a filing cabinet to consult later (corresponding to the cache). If you come back in six weeks, the forms are pulled back out from that cabinet. But, if you instead do not visit for three years, the file cabinet will be cleaned out (flushed) and on your next visit, new forms will be generated. This is precisely what the '854 Patent claims, but in the context of a website.

Any alleged benefits from the performance of the abstract idea, such as speed or efficiency, would directly relate to the very abstract idea of convenient data storage for frequently accessed files. The '854 Patent does not claim a new cache or improved method of data storage. The '854 Patent merely describes a cache for what it is—a place to store frequently-accessed information (*see id.*). Without identifying a specific embodiment for a generic "cache," or describing any improvement in how a cache operates, Claim 1 is directed to an abstract idea.

Judge Stark's *Quotient* opinion does not address the abstract idea presented here. As noted above, Judge Stark held that "providing targeted information, including advertising to a user" did not properly reflect the claims of the '854 Patent. *Quotient*, 2019 WL 2904670, at *2. In holding that the asserted abstract idea missed the mark, Judge Stark expressly noted that "it may be possible that Claim 1 could be accurately characterized as directed to some abstract idea." *Id.* Although

Judge Stark stated that "the invention is changing the computer functionality to improve the efficiency of the technological process that was already using a computer," *see id.*, CarMax submits that that is not the case when the claims are considered in the context of the properly-framed abstract idea, which is tied to an ordinary business practice and matches ideas found ineligible by a court in this District and the Federal Circuit. The abstract idea articulated herein, namely providing customized information from a template in one of two locations based on frequency of access, is ineligible.

## 2.      The Cache Patents Have No Inventive Concept to Confer Eligibility

With respect to step two of the *Alice* analysis, Claim 1 has no "inventive concept." The question is whether the claims invoke "already-available computers," and if so, whether their use is "plausibly asserted to be an advance." *See Customedia* at 1366 (recitation of a conventional receiver failed to provide an inventive concept). In *Versata*, the court rejected the argument that statements in a specification attributing improvements in website operation to a caching system demonstrated such an improvement because the claim language failed to address "the inventive use of the computer." *Versata*, 2015 WL 5768938, at *22 (quotation omitted).

There is no "plausible assertion" found anywhere in claim 1 (or in the '854 Patent's specification) indicating that any non-generic computing elements are used or that their function is in any way modified. *See Customedia*, 951 F.3d at 1366. Claim 1 of the '854 Patent does not recite specific computing elements and generically recites receiving a template program "from one of at least two locations, the location determined from the frequency of the user request for the customized page" ('854 Patent at Claim 1). This is simply the abstract idea as carried out in any business that presents customized information. The claimed use of "[s]uch generic and functional hardware is insufficient to render" the claim patent-eligible. *Customedia*, 951 F.3d at 1366.

18

The *Quotient* decision does not require a finding in this case that Claim 1's limitations "transform" the claims. The record here is different. Judge Stark was not presented with the properly-framed abstract idea, which addresses the basic data organization practice of convenient data retrieval for frequently accessed templates. As the Federal Circuit recently underscored, step two "more precisely" requires analysis of "what the claim elements add." *Customedia*, 951 F.3d at 1365. Claim 1 merely recites the use of generic steps carried out using "generic computer components." *See id.* at 1366. Failing to "plausibly assert an advance" in the use of "already-available computers," Claim 1 of the '854 Patent lacks an inventive concept. *Id.* at 1366. The Court should therefore dismiss Digi Portal's infringement allegations as to all of the Cache Patents.

### 3.   The Cache Patents' Dependent Claims Add Nothing Inventive

The Cache Patents' dependent claims fail to remove the claims from the realm of abstractness, or to provide an inventive concept. All of these claims are directed to the same abstract idea as Claim 1 of the '854 Patent. Some merely provide additional examples of the type of information used to identify the customized information, or examples of customized information returned to the user. Others refer to creating a template, using a cache to store user templates, or to a shared memory to store live data. More specifically, these claims recite:

i.      Specifying categories of user preferences or demographics (*e.g.*, '854 Patent at claims 2-4, 9-11; '414 Patent at claims 3, 7-9, 17-19; '359 Patent at claims 5-7, 15-17);

ii.     Specifying preferences related to and categories of real-time information (*e.g.*, '854 Patent at claims 6, 7, 13, 14; '414 Patent at claims 6, 16; '359 Patent at claims 4, 14);

iii.    Classifying an advertisement based on targeted demographic information (*e.g.*, '854 Patent at claims 5, 12; '342 Patent at claims 7, 8, 15, 16, 23, 24);

iv.     Using shared memory and/or storing real-time data in shared memory (*e.g.*, '854 Patent at claims 16, 17);

v.      Basic usage of a "cache" (or temporary storage) including caching, reading cache, and flushing cache as an express limitation, without reciting the use of any non-generic equipment or functionality (*e.g.*, '414 Patent at claims 2, 12, 20-23; '359 Patent at claims 2, 8, 9, 11, 18, 19; '342 Patent at claims 2-6, 10-14, 18-22); and

      vi.    Combining information into a template and/or sending or receiving it (*e.g.*, '414 Patent at claims 4, 5, 13-15; '359 Patent at claims 3, 12, 13).

These claims are all directed to the abstract idea of providing certain types of customized information from the most convenient location based on frequency of access, or merely claim the results of using "computers as tools," to complete processes previously performed by humans without computers, and therefore do not confer patent eligibility. *Customedia*, 951 F.3d at 1363. All claims of the Patents-in-Suit fail both prongs of *Alice* and are ineligible for patentability.

## VI.    CONCLUSION

For the foregoing reasons, CarMax respectfully requests that the Court dismiss the Complaint because the claims of the Patents-in-Suit are invalid under 35 U.S.C. § 101.

YOUNG CONAWAY STARGATT
& TAYLOR,  LLP

OF COUNSEL:

                    */s/ Anne Shea Gaza*

Robert L. Lee                  Anne Shea Gaza (No. 4093)

Emily Welch                   Beth Ann Swadley (No. 6331)

ALSTON & BIRD LLP          Rodney Square

One Atlantic Center          1000 North King Street

1201 West Peachtree Street   Wilmington, DE 19801

Atlanta, GA 30309         (302) 571-6727

(404) 881-7000            *agaza@ycst.com*

Bob.Lee@alston.com        *bswadley@ycst.com*

Emily.Welch@alston.com

                    *Attorneys for Defendant*

                    *CarMax Business Services, LLC*

Dated: February 11, 2021